**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER D. HOLT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-00044-AGF |
| | ) |
| SCOTT ELLISON, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiff Christopher D. Holt for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion, and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $19.07. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss plaintiff's complaint without prejudice.

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of the Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion for leave to proceed in forma pauperis, plaintiff has submitted a copy of his certified inmate account statement. (Docket No. 3). The account statement shows an average monthly deposit of $95.33. The Court will therefore assess an initial partial filing fee of $19.07, which is 20 percent of plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the

2

plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant currently incarcerated at the Eastern Reception, Diagnostic and Correctional Center in Bonne Terre, Missouri. He brings this civil action pursuant to 42 U.S.C. § 1983, naming Kennett City Police Officer Scott Ellison as the sole defendant. Officer Ellison is sued in both his official and individual capacities. (Docket No. 1 at 2).

According to plaintiff's complaint, Officer Ellison used "excessive force against [him]" on August 3, 2018. (Docket No. 1 at 4). Though it is a bit unclear, this apparently occurred following a "minor traffic accident" in which plaintiff's vehicle struck a bicyclist. Plaintiff states that he was "attempting to help the subject off the ground" when Officer Ellison pulled his service weapon. Next, Officer Ellison allegedly forced plaintiff "into [plaintiff's] vehicle, without any cause other than [his] physical appearance." Plaintiff states that this incident terrified him and left him "scared [and] emotionally afraid of law enforcement."

Plaintiff further accuses Officer Ellison of manipulating court documents – specifically a probable cause statement – and of "being deceptive, evasive, and failing to state facts as they

[occurred].<sup>1</sup>" In particular, plaintiff asserts that Officer Ellison did not include anything pertaining to the time between plaintiff striking the bicyclist and Officer Ellison "forcing [plaintiff] into [plaintiff's] vehicle." Plaintiff also states that as a result of this incident, he has been awaiting trial for almost two years.

As a result of this alleged incident, plaintiff states that he has suffered severe mental anguish, as well as two years of pretrial incarceration. He seeks $2 million in damages, as well as an order directing mandatory training for officers of the Kennett City Police Department "to prevent excessive force and discrimination." (Docket No. 1 at 5).

## Discussion

Plaintiff is a self-represented litigant who brings this action pursuant to 42 U.S.C. § 1983, alleging that Officer Ellison of the Kennett City Police Department used excessive force against him. For the reasons discussed below, the action must be dismissed without prejudice for failure to state a claim.

### A. Official Capacity Claim

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also*

---

[1] The Court has reviewed plaintiff's state criminal cases on Case.net, Missouri's online case management system. The Court takes judicial notice of these public records. *See Levy v. Ohl,* 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district court may take judicial notice of public state records); and *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records"). According to the records in the circuit court, plaintiff has been charged with resisting a lawful stop by fleeing, a Class E felony. *State of Missouri v. Holt*, No. 18DU-CR01233-01 (35th Jud. Cir., Dunklin County). The case was subsequently transferred to Butler County, along with two other cases against plaintiff, and remains pending. *State of Missouri v. Holt*, No. 19BT-CR00120 (36th Jud. Cir., Butler County). The probable cause statement to which plaintiff refers indicates that Officer Ellison observed plaintiff strike the bicyclist after driving his car in reverse at a high rate of speed. Officer Ellison gave several commands to plaintiff to return to his vehicle. The statement provides that when plaintiff got back into the vehicle, he drove away.

*Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Here, plaintiff alleges that Officer Ellison is employed by the Kennett City Police Department. Thus, the official capacity claim against him is actually against Kennett City itself, Officer Ellison's employer.

A local governing body such as Kennett City can be sued directly under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). In order to prevail on this type of claim, the plaintiff must establish the city's liability for the alleged conduct. *See Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). As such, there are three ways in which a plaintiff can prove the liability of Kennett City.

First, the plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives

5

by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, the plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, the plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, the plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, the plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

The plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

In this case, plaintiff has failed to state a claim against Kennett City. He has not presented any facts to support the proposition that an unconstitutional policy or custom exists. That is, he has not pointed to any "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body" to establish that Kennett City has an unconstitutional policy. He has also failed to show the existence of widespread unconstitutional misconduct, much less that Kennett City policymakers were deliberately indifferent to or tacitly authorized such conduct, which is necessary to demonstrate an unconstitutional custom. Finally, plaintiff has alleged no facts regarding a failure to train its employees on the part of Kennett City. In particular, he has not alleged a "pattern of similar constitutional violations by untrained employees." For these reasons, plaintiff's official capacity claim against Officer Ellison must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

**B. Individual Capacity Claim**

Plaintiff has accused Officer Ellison of violating his constitutional rights by using excessive force against him. "The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Thompson v. City of Monticello, Ark.*, 894 F.3d 993, 998 (8th Cir. 2018). *See also Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) ("The right to be

7

free from excessive force is included under the Fourth Amendment's prohibition against unreasonable seizures of the person"); and *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) ("The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest or investigatory stop of a free citizen"). The violation of this right is sufficient to support an action under § 1983. *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003).

Whether force is excessive under the Fourth Amendment requires a determination of whether or not law enforcement officers' actions were "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Ellison v. Lesher*, 796 F.3d 910, 916 (8th Cir. 2015). Factors that are relevant to the reasonableness of an officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Burnikel v. Fong*, 886 F.3d 706, 710 (8th Cir. 2018). "However, not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Robinson v. Hawkins*, 937 F.3d 1128, 1135-36 (8th Cir. 2019). To that end, law enforcement officers undoubtedly have a right to use some degree of physical force, or threat of physical force, to effect a lawful seizure. *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011). "A de minimis use of force is insufficient to support a claim, and it may well be that most plaintiffs showing only de minimis injury can show only a corresponding de minims use of force." *Robinson*, 937 F.3d at 1136.

Plaintiff has not alleged that Officer Ellison used any physical force against him, or that he touched him in any way. Instead, the sole allegation is that Officer Ellison "pull[ed] his service weapon [to] force [plaintiff] in the car." An officer's drawing and pointing a weapon at a suspect

can constitute excessive force under the Fourth Amendment. *See Wilson v. Lamp*, 901 F.3d 981, 990 (8th Cir. 2018) (explaining that officers used excessive force when they kept guns drawn on vehicle driver even after it was determined that driver was not the suspect they were seeking, and even after the driver had been patted down). However, to be excessive, the gun must be pointed at the suspect for an unreasonably long period of time, and after the police have taken control of the situation. *See Clark v. Clark*, 926 F.3d 972, 979-80 (8th Cir. 2019) (determining that an officer pointing a gun at a suspect "for a few seconds while removing him from his vehicle did not constitute excessive force, and did not violate the Fourth Amendment").

Here, plaintiff has not demonstrated that Officer Ellison's drawing of his firearm was excessive. Indeed, his own allegations show only that Officer Ellison drew his gun to get plaintiff to return to his vehicle. There is no indication that Officer Ellison kept the gun out longer than necessary, that he kept his gun out after the situation was under control, or even that Officer Ellison actually pointed the weapon at plaintiff. While plaintiff claims that Officer Ellison "forced" him into his car, he presents no facts showing that he was being compliant with Officer Ellison's directives. In short, plaintiff's facts do not establish that Officer Ellison's mere "pulling [of] his service weapon" was unreasonable under the circumstances. Therefore, plaintiff's excessive force claim must be dismissed.

### C. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 4). The motion will be denied as moot as this action is being dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $19.07 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 4) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 29th day of June, 2020.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE